***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction of this matter in that the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on February 17, 1999, which is the date of the incident at issue.
3. On that date, defendant-employer was self-insured, with Sedgwick Claims Management Services, Inc. acting as its servicing agent.
4. Plaintiff's March 18, 1999 recorded statement transcript, as well as plaintiff's Answers to Defendants' First Set of Interrogatories, are stipulated and admitted into evidence.
5. The Industrial Commission Forms 18, 19, 61, 33 and 33R are stipulated and admitted into evidence.
6. The medical records of Dr. Joseph Turnbull of McDowell Community Services, Inc.; Dr. Vincent Denuna at the McDowell Hospital; Dr. William V. Fowler at McDowell Family Medicine; Rutherford Hospital Emergency Room; and Dr. Mark L. Moody, are stipulated and admitted into evidence.
7. The Industrial Commission Form 22, together with its supporting wage documentation, are stipulated and admitted into evidence.
8. The depositions of Dr. Turnbull and Dr. Denuna have been entered into the record.
9. The stipulated issue to be determined in this case is whether the February 17, 1999 incident caused a left inguinal hernia and, if so, its compensable consequences.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. On the date of the February 17, 1999 incident, plaintiff was employed by defendant-employer as an edge plug, which involved plugging holes, marking defects and otherwise inspecting pieces of plywood. Plaintiff was also responsible for emptying trash barrels, as well as sweeping and picking up debris. Plaintiff worked on the second shift and his supervisor was Dawn Vanover.
2. Plaintiff's medical history included sustaining a work-related right inguinal hernia in February 1994, when plaintiff was employed by another employer. Plaintiff underwent surgery for the repair of that hernia on February 25, 1994, performed by Dr. Denuna.
3. On February 12, 1999, plaintiff was examined by his family physician, Dr. Fowler, for an upper respiratory infection which included a cough and congestion. Plaintiff was prescribed Claritin for those symptoms.
4. On February 15, 1999, plaintiff asked his supervisor, Dawn Vanover, if he could go home early to put a transmission in someone's car. Thereafter, on February 16, 1999, plaintiff was observed using defendant-employer's office copier to make copies of fliers advertising his home auto repair business.
5. On the date of the February 17, 1999 incident, plaintiff arrived for work four and a half hours late.
6. On February 17, 1999, plaintiff sustained an injury by accident to his back when a forklift struck a wheeled dolly, on which rested a 55-gallon trash barrel. The dolly and trash barrel did not touch or strike plaintiff. Rather, it caused plaintiff to twist his back. The incident was witnessed by a co-employee, Cathy Barrier. Plaintiff told Barrier that nothing hit him and that he was "okay." Plaintiff made no complaints to Barrier of any pain, bulges or other hernia-like symptoms.
7. Following the occurrence of the February 17, 1999 incident, plaintiff reported it to his supervisor that same day. Initially, plaintiff told his supervisor that he "felt fine." However, approximately 30-60 minutes later, plaintiff returned to his supervisor to report that his back was hurting too much to work. Consequently, plaintiff left work early. Plaintiff did not request any medical attention at that time and, further, plaintiff did not make any complaints to his supervisor of a bulge or of any other hernia-like symptoms. Nevertheless, in response to plaintiff's complaints of back pain, his supervisor told plaintiff to call defendant-employer's plant nurse the following day to report the incident.
8. On February 18, 1999, Amy Rhymer, who was at that time employed by defendant-employer in its Human Resources Department, received two calls from McDowell Family Medicine, where Dr. Fowler practices. Rhymer was told that plaintiff was there, and had sustained an injury, and that workers' compensation coverage needed to be verified. In response to both of those calls, Rhymer told the person on the telephone that plaintiff would have to come into the plant and report the injury or pay for the office visit himself. Thereafter, plaintiff reported the incident to Rhymer, and specifically reported that he was experiencing back pain. Plaintiff never made any complaints to Rhymer of a bulge or other hernia-like symptoms. As a consequence of his report of back pain, Rhymer told plaintiff he would need to be seen by defendant-employer's plant nurse.
9. Dr. Fowler's records indicate that on February 18, 1999, at approximately 9:15 a.m. plaintiff called seeking a refill of the pervious Claritin prescription. Dr. Fowler's records also reveal that plaintiff was waiting in the lobby on that date but left before he could be seen. There is no evidence that plaintiff reported a bulge or any other hernia-like symptoms to Dr. Fowler or to his office personnel on February 18, 1999.
10. On February 18, 1999, after speaking with Rhymer, plaintiff reported the February 17, 1999 incident to defendant-employer's plant nurse. He made no complaints of a bulge or of other hernia-like symptoms. As a result of plaintiff's complaints of back pain, the plant nurse took plaintiff to Dr. Turnbull's office for an examination. On that date, plaintiff was examined by Dr. Turnbull's physician's assistant, Anthony Metter. Plaintiff provided Mr. Metter with a history which consisted of complaints of "some pain in his back." Plaintiff was diagnosed with paravertebral strain and was prescribed medication for pain. There is no evidence that plaintiff reported to Mr. Metter or to Dr. Turnbull any complaints of bulging or other hernia-like symptoms on February 18, 1999. In fact, Mr. Metter's thorough physical examination of plaintiff's abdominal area did not reveal a hernia. As a result, Mr. Metter later assured Dr. Turnbull that plaintiff did not have a hernia on February 18, 1999.
11. Although plaintiff returned to work on February 18, 1999, he did not work again until February 22, 1999. On February 19, 1999, plaintiff was involved in a motor vehicle accident. Following that accident, plaintiff was treated at Rutherford Hospital emergency room where he complained of pain in his back and neck. Plaintiff reported that he was wearing a seatbelt. During the examination by the emergency room nurse, plaintiff reported to the nurse that he "wanted to talk to his lawyer." Although plaintiff reported a past medical history of hypertension and depression, there was no report made by plaintiff of the February 17, 1999 incident, or of any bulging or other hernia-like symptoms. Plaintiff was diagnosed with a musculoskeletal strain and it was noted plaintiff had an exaggerated response to palpation of the thoracic and cervical paraspinous muscles. Plaintiff was instructed to rest and to take anti-inflammatory muscle relaxers and to follow up with his primary medical doctor for further treatment.
12. Plaintiff next sought medical treatment on February 23, 1999, when he was first examined by Dr. Turnbull and then by Dr. Fowler. During Dr. Turnbull's examination, and for the first time, plaintiff complained of swelling and pain in his left lower abdomen. Plaintiff reported to Dr. Turnbull that he did not notice any swelling in the left inguinal area until after he left Dr. Turnbull's office on February 18, 1999, and took a shower. Plaintiff testified at the hearing that Dr. Turnbull's reference to a shower meant that he took a shower after he left work on February 17, 1999, not after he left Dr. Turnbull's office on February 18, 1999. As a consequence of Dr. Turnbull's examination of plaintiff on February 23, 1999, he diagnosed plaintiff with a left inguinal hernia and referred plaintiff for surgical treatment.
13. After leaving Dr. Turnbull's office on February 23, 1999, plaintiff went to Dr. Fowler's office, for a second opinion. Although plaintiff testified at the hearing that he was not examined at Dr. Fowler's office on February 23, 1999, the stipulated medical records of Dr. Fowler indicate that plaintiff was examined by a nurse on February 23, 1999. Contrary to plaintiff's hearing testimony, plaintiff reported to the nurse that Dr. Turnbull had not previously examined his hernia.
14. Plaintiff next received medical treatment on February 25, 1999, when he again was examined by Dr. Turnbull. At that time, plaintiff reported that he was experiencing a lot of pain with the hernia when he coughed.
15. Plaintiff next received medical treatment on April 5, 1999, when he was examined by Dr. Denuna, after which Dr. Denuna performed a surgical repair of plaintiff's left inguinal hernia on April 16, 1999. Plaintiff was released from Dr. Denuna's care on May 17, 1999, with no permanent partial impairment or work restrictions. Prior to that date, plaintiff's employment at defendant-employer was terminated on February 26, 1999, for reasons unrelated to plaintiff's workers' compensation injury. At no time between February 26, 1999 and Dr. Denuna's April 16, 1999 surgery was plaintiff authorized to be out of work as a consequence of his hernia.
16. Plaintiff's testimony regarding the history of development of his hernia symptoms, as well as his reporting of his symptoms to defendant-employer and his physicians, is not credible. Plaintiff's testimony at the hearing regarding the onset of his hernia symptoms was inconsistent, contradictory and evasive. The credible evidence of record indicates that no employees of defendant-employer were aware that plaintiff had allegedly suffered a hernia at any time prior to Dr. Turnbull's examination of February 23, 1999.
17. When presented with a full history of plaintiff's medical treatment and activities prior to the February 23, 1999 examination of plaintiff, neither Dr. Turnbull nor Dr. Denuna could state that, more likely than not, the February 17, 1999 incident caused plaintiff's hernia.
Rather, plaintiff's activities of placing a transmission into someone's car, the motor vehicle accident of February 19, 1999, and plaintiff's bout of coughing that began February 12, 1999 and continued at least through February 18, 1999, were all possible and plausible causes of plaintiff's hernia.
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff has failed to satisfy his burden of proving that the left inguinal hernia which was diagnosed on February 23, 1999, immediately followed, or was otherwise caused by, the February 17, 1999 incident. N.C. Gen. Stat. § 97-2(18). Additionally, plaintiff has failed to meet his burden of proving that the hernia appeared suddenly, as required by the Act. N.C. Gen. Stat. § 97-2(18). Plaintiff's testimony by the undersigned regarding the onset and reporting of his symptoms is not accepted by the undersigned as credible.
2. Plaintiff is not entitled to temporary total disability compensation as a consequence of the February 17, 1999 incident. Specifically, that incident only resulted in a low back strain for which plaintiff was not disabled for a sufficient period of time to be entitled to any temporary total disability benefits. N.C. Gen. Stat. §§ 97-28, 97-29.
3. Defendants shall pay the expenses of plaintiff's examination by Dr. Turnbull of February 18, 1999, since that examination resulted from plaintiff's complaints of back pain that resulted from the February 17, 1999 incident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for additional workers' compensation benefits subsequent to February 17, 1999, in connection with his left inguinal hernia is hereby DENIED and DISMISSED.
2. Each party shall bear its own costs.
This the ___ day of August 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER